**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

———————————————————————

| | |
|---|---|
| ADVANCEMENT PROJECT, | ) |
| 1220 L Street, N.W., Suite 850 | ) |
| Washington, DC 20005 | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES DEPARTMENT OF | ) |
| HOMELAND SECURITY, | ) |
| | ) |
| U.S. IMMIGRATION AND CUSTOMS | ) |
| ENFORCEMENT, | ) |
| | ) |
| U.S. CITIZENSHIP AND IMMIGRATION | ) |
| SERVICES, and the | ) |
| | ) |
| UNITED STATES DEPARTMENT OF | ) |
| STATE, | ) |
| | ) |
| Defendants. | ) |

Civil Action No. 19-cv-52

———————————————————————

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1.       This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for declaratory and injunctive relief to compel the disclosure and release of agency records requested by Plaintiff, Advancement Project from the Defendants U.S. Department of Homeland Security ("DHS"), U.S. Immigration and Customs Enforcement ("ICE"), U.S. Citizenship and Immigration Services ("USCIS"), and the U.S. Department of State ("State Department"). The documents in question relate to the Government's visa sanctions against Guinea, Sierra Leone, Eritrea, and Cambodia issued on September 13, 2017.

2.       Advancement Project challenges DHS's, ICE's, USCIS's, and the State Department's failure to disclose and release responsive records and DHS's and the State Department's failure to make a timely decision concerning expedited processing. Advancement Project seeks injunctive and other appropriate relief.

## JURISDICTION AND VENUE

3.       This Court has subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to under 28 U.S.C. § 1331 and 5 U.S.C. §§ 552(a)(4)(B) and (a)(6)(E)(iii).

4.       Venue is appropriate in the District of Columbia pursuant to 5 U.S.C. § 552 (a)(4)(B) and 28 U.S.C. § 1391 (e).

## PARTIES

5.       Plaintiff Advancement Project ("AP") is a non-profit, next generation, multi-racial civil rights organization. Rooted in the great human rights struggles for equality and justice, AP exists to fulfill America's promise of a caring, inclusive and just democracy. AP provides legal, organizing, and communications support to grassroots organizations across the country in its Power and Democracy Project, Justice Project, Opportunity to Learn Project, and the Immigrant Justice Project.  Since 1999, AP has regularly written reports in educating the public on issues such as voting rights, school discipline, restoration of civil rights for returning citizens, and criminalization of undocumented persons. AP staff have testified before state and federal legislative bodies on civil rights and racial justice. AP holds press conferences, issues press releases, disseminates its reports on its website, http://www.advancementproject.org, and through social media platforms.

2

6.       Defendant DHS is a department within the executive branch of the United States government. It is an "agency" within the meaning of 5 U.S.C. § 552(f)(1) and is headquartered in Washington, D.C. Upon information and belief, DHS has possession, custody, and control over the records Plaintiff seeks.

7.       Defendant State Department is a department within the executive branch of the United States government. It is an agency within the meaning of 5 U.S.C. § 552(f)(1) and is headquartered in Washington, D.C. Upon information and belief, State Department has possession, custody, and control over the records Plaintiff seeks.

8.       Defendant ICE is a component agency of DHS.  It is an agency within the meaning of 5 U.S.C. § 552(f)(1) and is headquartered in Washington, D.C. Upon information and belief, ICE has possession, custody, and control over the records Plaintiff seeks.

9.       Defendant USCIS is a component agency of DHS.  It is an agency within the meaning of 5 U.S.C. § 552(f)(1) and is headquartered in Washington, D.C. Upon information and belief, USCIS has possession, custody, and control over the records Plaintiff seeks.

## STATEMENT OF FACTS

## Background of Visa Sanctions

10.       On January 25, 2017, President Donald J. Trump issued Executive Order 13,768, Enhancing Public Safety in the Interior of the United States.[1] Section 12, "Recalcitrant Countries," states that, "The Secretary of Homeland Security and the Secretary of State shall cooperate to effectively implement the sanctions provided by section 243 (d) of the

---

[1] Exec. Order No. 13,768, 82 Fed. Reg. 8799 (Jan. 25, 2017).

INA (8 U.S.C. 1253 (d)), as appropriate. The Secretary of State shall, to the maximum extent permitted by law, ensure that diplomatic efforts and negotiations with foreign states include as a condition precedent the acceptance by those foreign states of their nationals who are subject to removal from the United States."[2]

11.     On November 21, 2014, the Secretary of DHS designated Guinea and Sierra Leone for Temporary Protected Status ("TPS"). On May 21, 2017, the TPS designations for Guinea and Sierra Leone terminated.

12.     On September 13, 2017, DHS issued a press release ("DHS press release") announcing the implementation of visa sanctions on Cambodia, Eritrea, Guinea, and Sierra Leone in coordination with the State Department.[3] As stated in the DHS press release, "Acting Secretary of Homeland Security Elaine Duke notified Secretary of State Rex Tillerson that the governments of Cambodia, Eritrea, and Sierra Leone have denied or unreasonably delayed accepting their nationals ordered removed from the United States."[4] ICE Acting Director Thomas Homan is quoted in the press release stating that, "American citizens have been harmed because foreign governments refuse to take back their citizens. These sanctions will ensure that the problem these countries pose will get no worse as ICE continues its work to remove dangerous criminals from the United States."[5]

13.     The DHS press release stated that the numbers of impacted populations included:

    a.   2,137 Guinean nationals,

---

[2] *Id.*

[3] Press Release, U.S. Dep't. of Homeland Security, DHS Announces Implementation of Visa Sanctions on Four Countries (Sept. 13, 2017), *available at* https://www.dhs.gov/news/2017/09/13/dhs-announces-implementation-visa-sanctions-four-countries.

[4] *Id.*

[5] *Id.*

    b.  831 Sierra Leone nationals,

    c.  700 Eritrean nationals, and

    d.  more than 1,900 Cambodian nationals.[6]

14.      Following the announcement of the visa sanctions, Plaintiff was in communication with the UndocuBlack Network, "a multigenerational network of currently and formerly undocumented Black people that fosters community, facilitates access to resources and contributes to transforming the realities of our people, so we are thriving and living our fullest lives."[7] Plaintiff has provided communications and advocacy support to the UndocuBlack network in the past and assisted the UndocuBlack Network with its press release regarding the September 13, 2017 visa sanctions. In order to provide additional advocacy support, Plaintiff began working on a FOIA request regarding the visa sanctions to Cambodia, Sierra Leone, Guinea, and Eritrea issued on September 13, 2017.

### Plaintiff's FOIA Request to DHS, the State Department, ICE, and CBP

15.      On December 8, 2017, following Acting DHS Secretary Duke's announcement to implement visa sanctions, Plaintiff submitted a FOIA request to DHS, the State Department, ICE, and U.S. Customs and Border Protection ("CBP"). The request sought the following documents:

    1.  For the period of January 1, 2017 through November 30, 2017:

    a.  Any and all records reflecting, recording or stating the number of asylum applicants, recipients, and denials per month from Cambodia, Eritrea, Guinea and Sierra Leone.

---

[6] *Id.*
[7] UndocuBlack Network, http://undocublack.org/ (last visited Dec. 11, 2018).

b.  A complete list of all aliens of Cambodia, Eritrea, Guinea, or Sierra Leone, who have been deemed removable, including the following information: list of individuals (with identifying information removed as required), country of birth, date of birth, nationalities, states of residency, length of time in the United States, prior immigration status, and any convictions (including state of conviction, statute of conviction, date of conviction, judgment, sentence imposed, and sentence served).

c.  Any and all records reflecting, recording or stating the number of visa applicants, recipients, and denials per month from Cambodia, Eritrea, Guinea and Sierra Leone.

2.  All memoranda, reports, correspondence, communications, or other documents regarding the return of aliens deemed removable to Cambodia, Eritrea, Guinea, and Sierra Leone, including but not limited to:

a.  Guidance, guidelines, directives, rules, policies, procedures, communications, or other documents that discuss the procedures for processing and evaluating visa applications generally and any specific or special procedures for visa applications of nationals of Cambodia, Eritrea, Guinea, and Sierra Leone.

b.  Guidance, guidelines, directives, rules, policies, procedures or other documents that address the general criteria and process for returning nationals deemed removable and any specific or special processes for returning nationals of Cambodia, Eritrea, Guinea, and Sierra Leone.

c.  All correspondence related to the return of nationals deemed removable during the period January 1, 2017 through November 30, 2017 between and among the U.S. State Department, DHS, ICE, CBP and officials of each of the following countries: Cambodia, Eritrea, Guinea, and Sierra Leone.

3.  All memoranda, reports, correspondence, communications, or other documents from the period January 1, 2017 to November 30, 2017 that address the policies and practices of Cambodia, Eritrea, Guinea, and Sierra Leone related to and regarding aliens deemed removable, including:

a.  All documents related to processes and procedures established by those countries for the issuance of travel documents to their nationals.

b.  All documents related to the countries' refusal to issue travel documents to their nationals, or to permit or facilitate the return of their nationals.

c.  All documents related to analyses of country conditions that affect the return of nationals to each country.

4.  Any and all documents, including proposals, plans and drafts related to the development of the 9/13/2017 Visa Sanctions, including:

    a.  Guidance, guidelines, directives, rules, policies, procedures or other documents that address the definitions and meanings of the following terms, as used by the DHS in its release "DHS Announces Implementation of Visa Sanctions on Four Countries" dated September 13, 2017 (hereinafter, "9/13/2017 Press Release":
        i.   "Unreasonably delayed"
        ii.  "Refusing to accept"
        iii. "Reliable processes"
        iv.  "Appropriate response"

    b.  Guidance, guidelines, directives, rules, policies, procedures or other documents that address why Cambodia, Eritrea, Guinea, and Sierra Leone were the only countries included in the 9/13/2017 Visa Sanctions, including but not limited to:

        i.   Any and all documents that address the criteria for subjecting a country to visa sanctions such as those imposed on 9/13/2017.

        ii.  Any and all documents that detail efforts during the period January 1, 2017 through November 30, 2017 to evaluate whether any countries, other than Cambodia, Eritrea, Guinea and Sierra Leone, met the criteria referred to above in subsection 4(b)(i) for these types of visa sanctions.

    c.  All memoranda, reports, correspondence, communications, or other documentation from the period January 1, 2017 through November 30, 2017 detailing since, the implementation of visa sanctions, including but not limited to:
        i.   Countries that have been subject to visa sanctions
        ii.  The reason for each country's sanction

    d.  All memoranda, reports, correspondence, communications, or other documentation discussing or referring to plans or consideration of plans to change the 9/13/2017 Visa Sanctions, either by expanding it to other countries or including other types of visa applicants.

5.  All memoranda, reports, correspondence, communications, legal sources, or other documents that detail the following:

    a.  The crimes and individuals (with identifying information redacted as required) that DHS includes in the terms "criminal convictions," "serious

criminal convictions," and "dangerous criminals" as used in the 9/13/2017 Press Release.

b. The cases (with identifying information redacted as required) enumerated in the 9/13/2017 Press Release regarding aliens from Cambodia, Eritrea, Guinea, and Sierra Leone and any information on any arrests and convictions committed by these individuals, specifically substantiating these figures provided by DHS:

   i. 2,137 Guinean nationals released by ICE, including those "ICE has been forced to release," and enumerating those with serious criminal convictions;

   ii. 831 Sierra Leone nationals released by ICE, including those "ICE has been forced to release," and enumerating those with serious criminal convictions;

   iii. 700 Eritrean nationals subject to final orders of removal, enumerating those with serious criminal convictions, specifying any violent offenses and drug convictions;

   iv. 1900 Cambodian nationals subject to final orders of removal, indicating 1,412 of these with criminal convictions, specifying the specific crimes of conviction; and all Cambodian nationals ICE has been "compelled to release," including identification of those with serious criminal convictions, specifying any weapons and sex offenses, and drug convictions.

c. Studies or investigations on how nationals from Cambodia, Eritrea, Guinea, and Sierra Leone have harmed American citizens. In the 9/13/2017 Press Release, ICE Acting Director Thomas Homan stated, "American citizens have been harmed because foreign governments refuse to take back their citizens. These sanctions will ensure that the problem these countries pose will get no worse as ICE continues its work to remove dangerous criminals from the United States."

16.     Plaintiff sought "expedited processing" under 5 U.S.C. § 552(a)(6)(E)(i) and a full fee waiver pursuant to both 5 U.S.C. § 552 (a)(4)(A)(iii) and 6 C.F.R. § 5.11(k)(1)(public interest waivers).

17.     Plaintiff requested each agency expedite processing of the request, with the justification that it concerned federal government activity about which there is urgency to inform the public, thus satisfying the "compelling need." Pursuant to 5 U.S.C. § 552(a)(6)(A)(ii)(II)(E)(i), agencies shall provide expedited processing of records where

"the person requesting the records demonstrates a compelling need." A compelling need exists when there is, "with respect to a request made by a person primarily engaged in disseminating information, urgency to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II).  Plaintiff is an organization that is "primarily engaged in disseminating information." 5 U.S.C. § 552(a)(6)(E)(v)(II).

18.        Expedited processing of this FOIA request is justified because it concerns federal government activity about which there is urgency to inform the public, and thus a "compelling need," 5 U.S.C. § 552(a)(6)(E).  Release of the requested information will help to inform the public about the policies and procedures that the government is using to implement the September 13, 2017 visa sanctions against Cambodia, Eritrea, Guinea, and Sierra Leone. U.S. citizens, immigrants, and non-immigrants may be adversely affected by the visa sanctions. Individuals may be immediately impaired in their coordination with family in the sanctioned countries or hindered in their personal planning. Further, officials in each of the affected countries may be prevented from completing their diplomatic work with and inside the U.S. The administration has indicated its ongoing effort to deport thousands but has not shared publicly any substantiation that their removal will be done in accordance with international human rights norms.[8] The requested records will provide important information as to proper treatment of these aliens because for many of them, removal constitutes an imminent threat to their life and safety.[9] Research on the current conditions in Cambodia, Eritrea, Guinea, and Sierra Leone suggested that nationals

---

[8] *See* Universal Declaration of Human Rights, G.A. Res. 217 (III) A, U.N. Doc. A/RES/217(III) (Dec. 10, 1948).
[9] *See* 6 C.F.R. § 5.5(e)(i).

returned to these countries could be subject to persecution, torture, and death.[10] For

example, a 2016 State Department report on conditions in Eritrea found that killings and

disappearances; torture; and other cruel, inhuman, treatment occur frequently and with

impunity.[11] The 2017 State Department report on conditions in Eritrea found these

conditions continued.[12] Thus, a full understanding of the implications of the sanctions is

needed to ensure that the human rights of individuals are adequately protected.

19.     Plaintiff also requested a fee waiver pursuant to 5 U.S.C. § 552(a)(4)(A)(iii). Under

this provision, a requesting party is entitled to a waiver of all costs when disclosure of the

information is "likely to contribute significantly to public understanding of the operations

or activities of the government and is not primarily in the commercial interest of the

requester." 5 U.S.C. § 552(a)(4)(A)(iii). *See also* 6 C.F.R. § 5.11(k).

20.     The disclosed records will educate the public, supporting the work of state and local

community organizations like the UndocuBlack Network throughout the country with

primary constituencies in communities of color, especially the Black diaspora living in the

United States.  The disclosed records are also not primarily in the commercial interest of

Plaintiff.  The requested information would be disseminated without cost to members of

---

[10] For conditions in each country, *see* U.S. Dep't of State, Bureau of Democracy, H.R. and Lab, Cambodia 2016 Human Rights Report (2016), https://www.state.gov/documents/organization/265538.pdf; U.S. Dep't of State, Bureau of Democracy, H.R. and Lab, Eritrea 2016 Human Rights Report (2016), https://www.state.gov/documents/organization/265464.pdf; U.S. Dep't of State, Bureau of Democracy, H.R. and Lab, Guinea 2016 Human Rights Report (2016), https://www.state.gov/documents/organization/265474.pdf; U.S. Dep't of State, Bureau of Democracy, H.R. and Lab, Sierra Leone 2016 Human Rights Report (2016), https://www.state.gov/documents/organization/265510.pdf.
[11] U.S. Dep't of State, Bureau of Democracy, H.R. and Lab, Eritrea 2016 Human Rights Report (2016), https://www.state.gov/documents/organization/265464.pdf.
[12] U.S. Dep't of State, Bureau of Democracy, H.R. and Lab, Eritrea 2017 Human Rights Report (2017), https://www.state.gov/documents/organization/277241.pdf.

the public and would not be used for any commercial gain, as Plaintiff would provide public access to the documents, summarize the policy implications, and provide guidance on how impacted organizations and their constituents are being affected by these visa sanctions. Plaintiff also anticipates producing materials summarizing the information collected in a report, creating social media posts, and posting information on the Advancement Project website.

21.         Plaintiff substantiated in its FOIA request that as requester it met the standards for both expedited processing and fee waivers.

## Correspondence from DHS and Expedited Processing Appeal Denial

22.         On December 11, 2017, in a letter ("12/11/2017 DHS Acknowledgment Letter"), DHS acknowledged receipt of Plaintiff's request and denied Plaintiff's request for expedited processing stating that Plaintiff "did not qualify under any category pursuant to 6 C.F.R. Part 5 § 5.5(e)(1)." Rejecting Plaintiff's explanation of why Plaintiff qualified, the DHS response stated that Plaintiff is "not primarily engaged in the dissemination of information to the public," and that Plaintiff's FOIA request "did not . . . justify a grant of expedited processing under the applicable standards." The 12/11/2017 DHS Acknowledgment Letter also invoked the 10-day extension of time pursuant to 6 C.F.R. Part 5 § 5.5(c), as well as conditionally granted Plaintiff's request for a fee waiver. Plaintiff's FOIA request was assigned tracking number 2018-HQFO-00353 by DHS.

23.         On January 31, 2018, Plaintiff appealed the denial of expedited processing in a letter addressing the concerns raised in the 12/11/2017 DHS Acknowledgment Letter.

24.     To date, DHS has failed to make a determination on Plaintiff's FOIA request, DHS has not provided the records requested by Plaintiff in its FOIA request, and Plaintiff has not received a decision on its appeal of DHS's denial of expedited processing, notwithstanding FOIA's requirement of an agency response within twenty (20) working days.

25.     Plaintiff has exhausted the applicable administrative remedies with respect to its FOIA request to DHS.

26.     DHS has wrongfully withheld the requested records from the Plaintiff and never made a determination regarding Plaintiff's request expedited processing.

## DHS Referral of FOIA Request to USCIS and Correspondence with USCIS

27.     In the 12/11/2017 DHS Acknowledgment Letter, DHS also informed Plaintiff that DHS was going to transfer Plaintiff's FOIA request to USCIS and ICE. In addition to providing notification that DHS had begun to process the FOIA request, the 12/11/17 DHS Acknowledgement Letter stated that Plaintiff's FOIA request was transferred to the USCIS office "due to the subject matter of [the] request."  According to DHS FOIA regulations, an agency "may refer the responsibility for responding to [a] request or portion of the request to the component or agency" deemed appropriate. *See* 6 CFR Part 5 §5.4(d)(3).

28.     On September 26, 2018, Plaintiff received a letter from USCIS dated September 26, 2018 ("9/26/2018 USCIS Letter") where USCIS acknowledged receipt of Plaintiff's FOIA request on September 7, 2018.  The 9/26/2018 USCIS Letter indicated USCIS's plans to contact other program offices that were most likely to have responsive records and invokes the 10-day extension of time to respond pursuant to 5 U.S.C. § 552(a)(6)(B).  The

9/26/2018 USCIS Letter granted Plaintiff's request for a fee waiver, but denied Plaintiff's request of expedited processing for the same reasons provided by DHS in its denial of expedited processing.   Plaintiff's FOIA request was assigned tracking number NRC2018132472 by USCIS.

29.        Although DHS was the entity that referred Plaintiff's FOIA request in December 2017, the USCIS 9/26/2018 Letter erroneously stated that Plaintiff mailed FOIA request to USCIS on September 7, 2018. According to the date on 12/11/17 DHS Acknowledgement Letter, DHS transferred Plaintiff's FOIA request to USCIS over one year ago. What is also perplexing is that the 9/26/18 USCIS Letter states that USCIS does not believe it has responsive records and will be contacting other program offices. DHS referred Plaintiff's FOIA request to USCIS because DHS believed that USCIS had responsive records.

30.        Until Plaintiff received the 9/26/18 USCIS Letter, Plaintiff had not received any acknowledgement of its FOIA request, case control number or any other correspondence, records or determination related to the FOIA request from USCIS.  DHS FOIA regulations provide that the time for a component agency to respond to referrals or re-routed requests begins on the date of receipt of the request by that component, but not later than 10 days after receipt by any DHS component. *See* 6 CFR Part 5 §5.5(c).  Also, DHS is required to handle all referrals according to the date of initial receipt of the request. *See* 6 CFR Part 5 §5.4(g).

31.        The 9/26/18 USCIS Letter also stated that USCIS would deny Plaintiff's request for expedited processing because DHS had denied Plaintiff's request for expedited processing. However, DHS has never provided Plaintiff with a decision on its expedited processing appeal.

32.     On October 12, 2018 ("10/12/2018 USCIS Follow-Up Letter"), Plaintiff sent a follow-up letter to USCIS stating that DHS had referred Plaintiff's FOIA to USCIS on December 11, 2017 and stating that Plaintiff had not received neither an acknowledgment nor a determination from USCIS within twenty (20) working days of receipt of the request. U.S.C. § 552(a)(6)(A)(i).

33.     In a letter dated November 27, 2018, USCIS stated that Plaintiff appealed the action of the National Records Center regarding Plaintiff's request for records. In the letter, USCIS stated, "Although the Freedom of Information Act authorizes you to treat the failure to act on your request within the specified time limit as a denial thereof, this Office cannot act until there has been an initial determination by the office having jurisdiction thereof." USICIS treated Plaintiff's 10/12/2018 Follow-Up Letter as an appeal and the 10/12/2018 USCIS Follow-Up Letter was assigned tracking number APP2018001608.

34.     To date, USCIS has failed to make a determination on Plaintiff's FOIA request and has not provided the records requested by Plaintiff in its FOIA request, notwithstanding FOIA's requirement of an agency response within twenty (20) working days.

35.     Plaintiff has exhausted the administrative remedies with respect to its FOIA request to USCIS.

36.     USCIS has wrongfully withheld the requested records from the Plaintiff.


**Plaintiff's FOIA Request to ICE and Administrative Appeal Constructively Denied**

37.     As stated in Paragraph 15, by letter dated December 8, 2017, Plaintiff submitted a FOIA request to ICE. Although the original FOIA request included ICE as one of the

agencies, in the 12/13/17 DHS Acknowledgement Letter, DHS also informed Plaintiff that DHS was going to transfer Plaintiff's FOIA request to USCIS and ICE.

38.  On February 16, 2018, ICE sent an acknowledgement letter indicating receipt of Plaintiff's FOIA request, and stated that it received the FOIA request on December 11, 2017. ICE stated that Plaintiff's request was "too broad in scope, did not specifically identify the records which you are seeking, or only posed questions to the agency." *Id*. ICE stated that Plaintiff should resubmit the request within 30 days, or ICE would assume Plaintiff was no longer interested in the FOIA and would administratively close the request. ICE assigned tracking number 2018-ICFO-19811 to Plaintiff's FOIA request.

39.  Plaintiff maintained its position that its FOIA request was not "too broad in scope," nevertheless, on  March 12, 2018, Plaintiff narrowed the search to the following search terms for the time period of January 1, 2017 through November 30, 2017:

- Visa Sanctions AND Cambodia, Eritrea, Guinea, and Sierra Leone.
- Nationals subject to final orders of removal from Cambodia, Eritrea, Guinea, and Sierra Leone.
- Convictions of the Nationals subject to final orders of removal from Cambodia, Eritrea, Guinea, and Sierra Leone.
- ICE Enforcement and Removal Operations AND Cambodia, Eritrea, Guinea, and Sierra Leone AND September 13, 2017 Visa Sanctions.
- Directives, memoranda, reports, correspondence, policies, implementation policies or "standard operating procedures" AND Visa Sanctions AND Cambodia, Eritrea, Guinea, and Sierra Leone.
- ICE Office of the Principal Legal Advisor AND Directives, memoranda, reports, correspondence, policies, implementation policies or "standard operating procedures" AND Visa Sanctions  AND Cambodia, Eritrea, Guinea, and Sierra Leone.

40.  ICE did not confirm receipt or address Plaintiff's March 12, 2018 amended FOIA request in any subsequent correspondence.

41.     On July 11, 2018, ICE stated that based "upon initial review," responsive records to the request would be held "under the purview of The Privacy Office," thus, ICE referred the amended FOIA request to The Privacy office for processing.

42.     On September 27, 2018, ICE sent its "final response" to Plaintiff's FOIA request. ICE stated it considered the FOIA request under both the FOIA and the Privacy Act, 5 U.S.C. §552a. ICE concluded its investigation and sent its final determination stating that it had "conducted a search of the ICE Office of Enforcement and Removal Operations ("ERO") for records responsive to your request and no records were found." ICE stated that "an adequate search was conducted" and that Plaintiff had a right to appeal the determination that no responsive records exist within ICE ERO.

43.     On October 29, 2018, Plaintiff administratively appealed ICE's determination. Plaintiff filed an administrative appeal on several grounds including: failure to make a determination within the statutorily required time period, failure to acknowledge Plaintiff's amended FOIA request on March 12, 2018, failure to conduct a reasonable and adequate search, and failure to make a determination on Plaintiff's FOIA request for expedited process.

44.     To date, ICE has not provided any records requested by Plaintiff in its FOIA Request and ICE has not responded to Plaintiff's administrative appeal, notwithstanding FOIA's requirement that an agency respond to an administrative appeal within twenty (20) working days.

45.     Plaintiff has exhausted the applicable administrative remedies with respect to its FOIA request to ICE.

46.     ICE has wrongfully withheld the requested records from the Plaintiff.

## Plaintiff's FOIA Request to the State Department and Expedited Processing Appeal Denial

47.     As stated in Paragraph 15, by letter to State Department dated December 8, 2017, Plaintiff submitted a FOIA request.

48.     The State Department received the FOIA request on December 8, 2017. Plaintiff's FOIA Request was assigned Case Number F-2017-17617 by the State Department.

49.     Plaintiff received a letter from the State Department dated December 13, 2017 acknowledging Plaintiff's FOIA request ("12/13/17 State Dep't Acknowledgment Letter"). The letter asserted that "unusual circumstances may arise" that require additional time, however the State Department failed to set forth the specific unusual circumstances, an expected date of determination, or provide an opportunity to limit the scope of the request.

50.     In the 12/13/17 State Dep't Acknowledgment Letter, the State Department denied Plaintiff's request for expedited processing and stated it would defer the decision to grant or deny Plaintiff's fee waiver until the State Department made the FOIA determination. The letter also informed Plaintiff it had ninety (90) days to file an appeal.

51.     On January 31, 2018, Plaintiff administratively appealed the State Department's denial of expedited processing.

52.     The State Department received the administrative appeal on February 5, 2018 and in a letter dated February 13, 2018, denied Plaintiff's expedited processing appeal.

53.     To date, the State Department has failed to make a determination on Plaintiff's FOIA request and has not provided the records requested by Plaintiff in its FOIA request, notwithstanding FOIA's requirement of an agency response within twenty (20) working days.

54.     Plaintiff has exhausted the applicable administrative remedies with respect to its FOIA request to the State Department.

55.     The State Department has wrongfully withheld the requested records from the Plaintiff and wrongfully denied expedited processing.

### Plaintiff's FOIA Request to CBP

56.     As stated in Paragraph 15, by letter to CBP dated December 8, 2017, Plaintiff submitted a FOIA request.

57.     CBP received the FOIA request on December 8, 2017. Plaintiff's FOIA Request was assigned tracking number CBP-2018-016301 by CBP.

58.     In an electronic mail dated January 23, 2018, CBP informed Plaintiff that it could not provide the requested information because CBP did not report on subjects "deemed removable." CBP stated that the FOIA request would be better suited for ERO. CBP stated it did not have any responsive records and informed Plaintiff it had ninety (90) days to file an appeal.

59.     Plaintiff decided not to file an appeal of CBP's FOIA determination. CBP is not a Defendant in this matter.

### CAUSE OF ACTION

### COUNT I
### FOIA Violation: Failure To Disclose and Release Responsive Records
### (Against Defendant DHS, USCIS, ICE, and the State Department)

60.     Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 59 as if repeated and reincorporated herein.

61.      Plaintiff properly requested records that on information and belief are currently within the possession, custody, and control of DHS, USCIS, ICE, and the State Department.

62.      DHS, USCIS, ICE, and the State Department are agencies subject to FOIA, therefore they must make reasonable efforts to search for requested records.

63.      DHS has violated Plaintiff's right to DHS records under 5 U.S.C. § 552.

64.      USCIS, a component of DHS, has violated Plaintiff's right to USCIS records under 5 U.S.C. § 552.

65.      ICE, a component of DHS, has violated Plaintiff's right to ICE records under 5 U.S.C. § 552.

66.      The State Department has violated Plaintiff's right to State Department records under 5 U.S.C. § 552.

67.      Plaintiff has exhausted all administrative remedies with respect to its FOIA request for records under 5 U.S.C. § 552 (a)(6)(C)(i).

68.      Plaintiff has a statutory right under FOIA, 5 U.S.C. § 552 (a)(3)(A), to the records it requested, and there is no legal basis for DHS, USCIS, ICE, and the State Department's failure to disclose them.

**COUNT II**
**FOIA Violation: Failure to Timely Respond to and Grant Plaintiff's Request for Expedited Processing**
**(Against Defendants DHS, USCIS, and the State Department)**

69.      Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 59 as if repeated and reincorporated herein.

70.     DHS has failed to make a determination regarding Plaintiff's expedited processing request appeal within the time period required by 5 U.S.C. § 552 (a)(6)(A)(i).

71.     By failing to grant Plaintiff's request for expedited processing, DHS violated Plaintiff's right to expedited processing under 5 U.S.C. (a)(6)(E).

72.     USCIS denied Plaintiff's expedited processing request relying on DHS's alleged denial of Plaintiff's expedited processing request, an alleged denial that DHS has never provided to Plaintiff.

73.     By failing to grant Plaintiff's request for expedited processing, USCIS violated Plaintiff's right to expedited processing under 5 U.S.C. (a)(6)(E).

74.     Plaintiff received a denial of expedited processing from the State Department. The denial by Defendant State Department of Plaintiff's request for expedited processing, violates 5 U.S.C. (a)(6)(E).

75.     The interest of the Plaintiffs and the public in the expeditious processing of the requested records are irreparably harmed by the Defendants' denial of expedited processing. That harm outweighs any burden placed on the Defendants in expeditiously processing the Plaintiff's request, which is a burden imposed by Congress in the FOIA statute.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that this Court:

A.   Assume jurisdiction over this matter;

B.   Declare that Defendants' withholding of the requested records is unlawful;

C.   Declare that the Defendants' denial of expedited processing of Plaintiff's FOIA request violates the FOIA;

D.  Order Defendants' to immediately conduct a reasonable search for all responsive records and to make available all records responsive to the requests;

E.  Order each Defendant to grant Plaintiff a public interest fee waiver;

F.  Award Plaintiff costs and reasonable attorneys' fees pursuant to 5 U.S.C. § 552 (a)(4)(E) and 24 U.S.C. § 2412; and

G.  Grant all other relief as the Court deems just and proper.

Dated: January 10, 2019                          Respectfully submitted,

/s/ Losmin Jimenez
DC Bar No. 198691
Project Director and Senior Attorney for
Immigrant Justice

/s/ Gilda Daniels
DC Bar No. 462819
Director of Litigation

/s/ Jessica Alcantara*
NY Bar No. 5546551
* Application for pro hac vice admission
forthcoming
Staff Attorney

/s/ Jennifer Lai-Peterson*
CA Bar No. 228117
* Application for pro hac vice admission
forthcoming
Senior Attorney

ADVANCEMENT PROJECT
1220 L Street, N.W., Suite 850
Washington, DC 20005
Tel: (202) 728-9557
Fax: (202) 728-9558

LJimenez@advancementproject.org
GDaniels@advancementproject.org
JAlcantara@advancementproject.org
JLaiPeterson@advancementproject.org
Counsel for Plaintiff